SARAH E. SLAUSON, Appellant, *v.* HEZEKIAH WATKINS et al., Respondents.

The complaint herein alleged, in substance, that defendant L. sold and conveyed to plaintiff certain premises, taking back her bond for $22,000 and interest, secured by mortgage on the premises; that thereafter she contracted to sell the premises to defendant W., he contracting to pay $22,000 of the purchase-money "by the assumption of" the said mortgage; that she, at the request of W., deeded the premises to the wife of the latter, subject to the mortgage; that L. has commenced an action to foreclose the mortgage, and for judgment in case of deficiency against plaintiff. The relief asked was that W. be compelled to pay to L. the amount due on the bond and mortgage, and the latter to receive the same and surrender plaintiff's bond, to be canceled. *Held,* that the complaint was properly dismissed; that the agreement of W. was, in substance, to indemnify, and the effect of the transaction was to make the mortgaged premises primarily liable for the debt, and W. the principal debtor as between him and plaintiff, and until it was determined that there was a deficiency, and so a personal liability on his part, an action against him was inequitable and could not be maintained.

(Argued October 10, 1881 ; decided November 22, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 5, 1879, which affirmed a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

The defendant Ludington was the owner of a certain house and lot in the city of New York, and prior to April 18, 1873, conveyed the premises and furniture therein to the plaintiff E., taking back her bond, dated October 1, 1872, conditioned for the payment of $5,000, with interest within one year, and

$17,000 within five years from its date, with interest, and a mortgage on the property to secure its payment.  On the 18th of April, 1873, an agreement in writing was entered into between the defendant Watkins and the plaintiff, by which she undertook to sell him the same property for $35,500, and this he promised to pay "as follows : $22,000, by the assumption of" the mortgage above referred to, "together with interest from April 1, 1873," $3,500 by his notes at one year with interest ; $10,000 by turning over certain railroad bonds.  On the same day, at his request, she conveyed the premises to Elizabeth, his wife, "subject," as the deed states, to the above "mortgage." He gave the notes, turned over the bonds, and paid $2,000 of principal with the interest called for by the mortgage.  Afterward, in May, 1876, Ludington commenced an action to foreclose the mortgage and for judgment in case of deficiency against plaintiff.  That action was pending and undetermined when on the 29th of July, 1876, this action was commenced to compel Watkins to pay to Ludington, and Ludington to receive, the amount due on the bond and mortgage, and surrender up the plaintiff's bond to be canceled.  On the trial at the close of the plaintiff's case, the complaint was dismissed.

*Nathaniel C. Moak* for appellant.  The agreement between Watkins and Mrs. Slauson was not a contract of indemnity, but an absolute promise to pay the mortgage, and Mrs. Slauson having fully performed, on her part, by conveying the premises, the mortgage debt became the individual debt of Watkins.  (*Thorp* v. *Keokuk Coal Co.,* 48 N. Y. 253, 257 ; *Gilbert* v. *Weman,* 1 id. 550.)  It was not necessary for Mrs. Slauson to pay the mortgage to entitle her to maintain this action.  (*The Rector, etc.,* v. *Higgins,* 48 N. Y. 532 ; *Port* v. *Jackson,* 17 Johns. 239, 479 ; *Thomas* v. *Allen,* 1 Hill, 145 ; *Champlen* v. *Brown,* 6 Johns. Ch. 406 ; *Churchell* v. *Hunt,* 3 Denio, 321.)  A positive agreement to do an act which will be beneficial to the plaintiff, or prevent damage to her, will sustain an action if the defendant neglect to do such act, if the promise was founded upon a good consideration.  (*In re Ne-*

*gus,* 7 Wend. 501; *Chace* v. *Henmann,* 8 id. 453; *Mann* v. *Eckford,* 15 id. 501; *Webb* v. *Pond,* 19 id. 423; *Aberdeen* v. *Blackman,* 6 Hill, 325; *Cady* v. *Allen,* 22 Barb. 388; *Schote* v. *Schwartz,* MSS., Com. of App., 1872; *Ranclaugh* v. *Hoyce,* 1 Vern. 189, Mitford's Ch. 148; *Tounsant* v. *Martenant,* 2 T. R. 100; *Martin* v. *Court,* id. 640; *Holmes* v. *Rhodes,* 1 B. & P. 638; *Saward* v. *Ansley,* 2 Bing. 519; 9 Eng. Com. Law, 519; Adams' Equity, 270.) If one agree to pay the debt of another, and he fails to do so, the debtor may recover of him the amount of the debt without payment of it. (*Seligman* v. *Stout,* 14 Hun, 186, 189; *Belloni* v. *Freeborn,* 63 N. Y. 383, 390; *Gunel* v. *Cue,* 72 Ind. 34, 38; 2 Parsons on Cont. [6th ed.] 660; *Lewis* v. *Tipton,* 10 Ohio St. 88.) Even if Watkins was the principal debtor and Mrs. Slauson was only his surety, still this action could be maintained. (*Nesbit* v. *Smith,* 2 Brown's · Ch. 579; Theobald on Principal and Surety, 1 Law Library, 227; *Lee* v. *Root,* Mosely, 318; *Gibbs* v. *Mennard,* 6 Paige, 258.) Mrs. Slauson, having conveyed the house and lot, it was precisely the same as if she had placed $22,000 of the purchase-money in Watkins' hands, upon his promise to go and pay off the mortgage and take up her bond. (*Bennett* v. *Abrams,* 41 Barb. 619; *Wicker* v. *Hoppuch,* 6 Wall. 94, 99; *Fitch* v. *Taylor,* 13 Pick. 133; *Lathrop* v. *Atwood,* 21 Conn. 117; *Ireck* v. *Black,* 2 C. E. Green [N. J.], Equity, second head-note, pp. 189, 195; *Stevenson* v. *Taverner,* 9 Gratt. 398; *Stump* v. *Rogers,* 1 Hammond [Ohio], 533; *Retenour* v. *Matthews,* 42 Ind. 9–14.)

*Samuel Hand* for respondents. Plaintiff's relation to the case was simply that of surety for the defendant Watkins. (*Russell* v. *Pistor,* 3 Seld. 173, 174; *Johnson* v. *Zink,* 52 Barb. 396, 398; *Flower* v. *Lance,* 59 N. Y. 608; Thomas on Mortgages [ed. 1877], 186.) A surety can maintain suit only when he has paid something, or when a suit is necessary to terminate a continuing indefinite liability. (*Elwood* v. *Diefendorf,* 5 Barb. 398–410; *Cowell* v. *Smith,* 8 Johns. 249–252; DeColyar on Guarantees [Am. ed.], 1875, p. 308

note* p. 324; *Padwick* v. *Stanley*, 41 Eng. Ch., 9 Hare, 627; 1 Story's Eq. 322, § 327; 1 Story's Eq. [10th ed., 1870], § 639.) Plaintiff disproved any case for specific performance by showing affirmatively her own inability to perform the contract she was seeking specifically to enforce by reason of her defective title. (*Leggett* v. *Mut. Life*, 53 N. Y. 394, 398; *Delevan* v. *Duncan*, 49 id. 485; *Burwell* v. *Jackson*, 5 Seld. 535, 543; *Fletcher* v. *Button*, 4 Comst. 396–399; *Bates* v. *Delevan*, 5 Paige, 299, 306, 307; Sugden on Vendors, chap. 1, § 3, art. 17; *Fletcher* v. *Button*, 4 Comst. 396–402; *Little* v. *Paddleford*, 13 N. H. 167; *Everson* v. *Kirkland*, 4 Paige, 628; *Bowen* v. *Thral*, 28 Vt. 382; *King* v. *Knapp*, 59 N. Y. 463–467; *Seaman* v. *Hicks*, 8 Paige, 655; *Swayne* v. *Lyon*, 67 Penn. St. 436; *Smith* v. *Turner*, 50 Ind. 372; 19 Gratt. 591; 6 Peters, 389; 1 McLean, 200; Hopkins, 436; Willard's Eq. 290; *Geldes* v. *Hooker*, 2 Meriv. 427; 3 Parsons [7th ed.], 407*.) Plaintiff laid no foundation for specific performance, as she proved no written agreement (such as she had alleged) by Watkins to assume the mortgage. (*Burr* v. *Am. Spiral Spring Butt Co.*, 17 Hun, 188; 81 N. Y. 175.)

DANFORTH, J. The plaintiff's own proposition, as submitted by her counsel, is really an answer to the appeal. Assuming in the printed points a case most favorable to herself, she says, under these circumstances "a decree for a specific performance is almost a matter of strict legal right." It is, therefore, conceded to be so far deficient that something more is needed to make a cause of action, to which, as of course, the law will, by its own operation, apply a remedy. For this reason the principles of equity are invoked; yet they are to be applied, not as of course, but in the exercise of a sound discretion, and never in place of facts to make out a case for relief. The plaintiff shows no ground of action. She accepted the defendants' promises in full payment of the purchase-price of the property sold. By the express terms of the agreement $22,000 (part of this price) was discharged or paid, by his "assumption" of the mortgage. I do not think the word, as commonly understood, would indi-

cate a promise of immediate payment, or even of payment when due, but rather an adoption of or taking upon himself the burden of the mortgage, the care of it, so that the mortgagor should not be harmed or troubled by it. In substance then a promise, to indemnify, or hold the mortgagor harmless for or on account of it, not of payment under any circumstances to her. If, indeed, she should be called upon, either by action upon the bond, to secure which the mortgage was given, or be compelled to pay a deficiency arising on the foreclosure of the mortgage, the defendant would, by the terms of his agreement, be liable to her. (*Comstock* v. *Drohan*, 71 N. Y. 9.) But this is not the case. It seems, however, from the complaint itself, and such also is the admission in the answer, that before the commencement of the suit the holder of the mortgage had commenced its foreclosure. The result of that proceeding may supply the elements now lacking to afford a cause of action. But the fact itself is another reason against the remedy applied for by the plaintiff. Multiplicity of actions is to be avoided. The effect of the conveyance to Mrs. Watkins and the agreement between the plaintiff and Watkins was to make the mortgaged premises primarily liable for the debt, and the defendant Watkins principal debtor, as between himself and the plaintiff. (*Russell* v. *Pistor*, 7 N. Y. 171; *Comstock* v. *Drohan*, *supra*.) The premises, when sold under a decree of foreclosure, may produce enough to satisfy the mortgage and so terminate all personal liability, and until this is ascertained it would be most inequitable to vex the courts with fresh litigation over the same questions.

I am aware of no case, and certainly the appellant has cited none, where a court of equity has interfered in behalf of a surety to compel the principal debtor to pay a debt before it has been ascertained that the fund primarily liable was insufficient to discharge the obligation, or while the creditor was in court seeking to enforce it. In *Warner* v. *Beardsley* (8 Wend. 195), the Chancellor (WALWORTH) says: "If the time of payment is past and the creditor neglects to proceed, the surety himself may institute a suit in equity against the principal

debtor and the creditor;" and in *Gibbs* v. *Mennard* (6 Paige, 258), to which we are referred by the appellant, the same learned magistrate lays down the rule in a more general way, omitting the qualification above referred to, and this is repeated by him in *Marsh* v. *Pike* (10 Paige, 595), but in both instances he cites *Warner* v. *Beardsley* (*supra*), and in neither is the question decided upon such a proposition. In the first (*Gibbs* v. *Mennard*) the relief sought by the surety was denied upon the ground that the general principles by which the Court of Chancery was governed would not sustain a bill in equity against the principal on the bond "before any proceedings had been instituted against the surety for the recovery thereof." In the second (*Marsh* v. *Pike*), it appears from a fuller statement of the facts given in 1 Sandf. Ch. 210, that the surety, before suit brought, had applied to the principal debtor to pay off the bond and mortgage, and to the creditor to permit a foreclosure in his name at the surety's expense, and that these requests were refused. These cases do not help the plaintiff, for we have here, by her own showing, a creditor pursuing the usual remedy, and a debtor, the extent of whose liability is not yet ascertained. Moreover, if the defendant has in fact assumed the mortgage, he has fulfilled the agreement, and for any breach of the promise implied, therefore, the plaintiff can have, for aught that is alleged or proven, full compensation in damages for any injury she sustains. Upon this ground, therefore, the refusal of the court to interfere may be upheld. (1 Story's Eq. Jur., §§ 716, 717.) The cases cited by the appellant (*Crary* v. *Smith*, 2 N. Y. 60 ; *Brown* v. *Haff*, 5 Paige 235) are not to the contrary. All were actions on land contracts. In the first, the vendee was in possession of premises bargained for, and refused to take a deed under the contract or pay the price. In the second, the vendee refused to complete the purchase. In the third the vendee sought to compel the execution of the deed, and in each were circumstances taking the case out of the general rule to which I have referred. The case before us is destitute of any circumstance calling for the cognizance of a

court of equity, and was properly disposed of by the trial court.

The judgment appealed from should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.