### BONHOFF v. WIEHORST et al.

(Supreme Court, Special Term, Cattaraugus County. January 17, 1908.)

MORTGAGES—TRANSFER OF PROPERTY MORTGAGED—CONTRACTS—CONSTRUCTION.
Plaintiff conveyed to her son a farm subject to a mortgage on which plaintiff was not personally liable. On the son's death, his widow deeded her life estate to plaintiff, covenanted to pay the son's "lawful debts." The interest conveyed was of little value, owing to the fact that the son had given plaintiff a second mortgage on the property, at the time of the conveyance to him. *Held* that, even though in consideration of an extension of the time of payment of the first mortgage the son agreed with the original mortgagor to assume the mortgage, he became thereby simply an indemnitor to plaintiff or a surety for the payment of the mortgage, and plaintiff was not obligated to pay it as one of the son's lawful debts.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 756.]

Action by Dora Wiehorst Bonhoff against William Wiehorst and others. Judgment for plaintiff, and defendants move for a new trial. Motion denied.

Thomas H. Dowd and E. D. Northrup, for the motion.
W. G. Laidlaw, opposed.

WHEELER, J. This is a motion on behalf of the infant defendants for a new trial on the ground of newly discovered evidence. Upon the decision of this action, when tried before me upon the main issues in the case I had occasion to hand down an opinion, in which the essential facts as they were developed on the trial were carefully stated. 108 N. Y. Supp. 437. The court then held that the plaintiff was entitled to a foreclosure of what was designated the Jark mortgage, because, although in the deed from the plaintiff to her son Charles Wiehorst the grantee in form assumed and agreed to pay that mortgage, nevertheless such assumption imposed no legal liability upon the grantee, because his grantor, the plaintiff in this action, was under no personal obligation to pay that mortgage, and consequently the mortgage held by Jark was not a "lawful debt" of Charles Wiehorst, and the plaintiff therefore, in turn, was under no obligation to pay it. In this decision the counsel for all parties to the action apparently acquiesced as no appeal was taken. The affidavits now presented to the court disclose

that, after the decision of the case and the entry of judgment, the following document was discovered, the genuineness of which is not disputed. The paper in question reads as follows:

"Whereas Charles Wiehorst has this day assumed the payment of two thousand one hundred and fifty dollars of the principal of a certain mortgage dated March 17, 1863, (erroneously, as the year should be 1873) and recorded July 3, 1873, in Liber 53 of Mortgages at page 69, in the Cattaraugus County Clerk's Office, executed to me by Dora and Henry Wiehorst, and has assumed the same as aforesaid and has purchased one hundred acres of the mortgaged premises this day on condition that I the undersigned shall and will extend the payment of said sum and interest as hereinafter stated. Now therefore know all men by these presents that I the undersigned Frederick Jark for the consideration of one dollar and his assuming to pay said sum and interest, do hereby agree to extend the payment thereof as follows: the interest at the rate of six per cent. per annum on said sum of $2150 or so much thereof as shall from time to time remain unpaid, to be computed from the first day of January next, and be paid on the 26th day of November in each year thereafter until the whole of said sum shall be paid, one hundred dollars of principal of said sum on the 26th day of November in each of the years 1884 and 1885 and the remaining principal being $1950, in ten equal annual instalments, the first instalment thereof to be paid on the 26th day of November 1886. with the privilege of making any of said payments at any time before due and payable.

"Witness my hand and seal this 26th day of November 1881.

"P. F. Jark. [Seal.]

"In presence of E. D. Northrup."

It will be observed that this paper purports to have been executed on the same day the plaintiff conveyed the premises covered by the Jark mortgage to her son Charles Wiehorst, and was found among his papers after his death.

It is claimed by the defendants that the legal effect of this instrument was to make the Jark mortgage the personal debt of Charles Wiehorst, and that, therefore, the plaintiff obligated herself to pay and discharge this mortgage by the provisions of the deed given her by the widow of Charles Wiehorst shortly after his death, in which the plaintiff agreed to pay the lawful debts of her son Charles. It therefore becomes important for the court upon this motion to determine the legal force and effect of the newly discovered document, with the view of ascertaining whether, had the paper in question been proven and introduced in evidence on the trial of this action, it would have caused a different result of this litigation. If it would have done so, then it is the duty of this court to set aside the judgment and grant a new trial. If, on the other hand, with the paper in evidence, the result would have been the same, a new trial should be denied. It is to be noted, in the first place, that by the document in question Charles Wiehorst is not made in form to assume or agree to pay the Jark mortgage. The paper recites the giving of the deed from the present plaintiff to her son Charles, and that in and by that deed Charles had assumed and agreed to pay the Jark mortgage, and that in consideration of this assumption by Charles Jark, the signer of the paper, agreed on his part to extend the time of the payment of his mortgage in the manner specified. Charles Wiehorst did not sign the paper or by it agree to do anything. His obligation seems to have been derived from the clause in the deed referred to, and not by this paper itself. But the

clause in the deed we have held was not legally binding upon or en-
forceable against Charles Wiehorst; and, inasmuch as the paper now
presented to the court refers to the deed as the basis of the assumption
by Charles, it may be well doubted whether the extension agreement
operated in any way to fortify or enlarge the agreement of assumption
contained in the deed. Inasmuch as the assumption clause of the deed
was unenforceable against Charles, it may well be argued that the de-
livery of the extension agreement reciting the assumption clause added
nothing to its binding effect and created no new obligation by its own
force, because it assumed to do nothing in and of itself, except to ex-
tend the time of payment. We do not think it necessary, however, in
the disposition of this motion for us to determine whether or not Charles
Wiehorst did obligate himself to pay the Jark mortgage. For the pur-
poses of this motion, we may assume that the legal effect of the entire
transaction was to make Charles Wiehorst to assume the mortgage in
question. Nevertheless, it does not follow the plaintiff is not entitled
to a foreclosure of the Jark mortgage. In numerous cases the courts
of this state have had occasion to discuss and construe the legal and
equitable force and effect of agreements by grantees to assume the pay-
ment of mortgages covering property conveyed to them, and have uni-
formly held that, by such agreements, the grantee simply covenanted
to save harmless his grantor from any deficiency judgment which might
arise upon the foreclosure of the mortgage assumed. Wilbur v. War-
ren, 104 N. Y. 197, 10 N. E. 263; Slauson v. Watkins, 86 N. Y. 597;
Keller v. Lee, 66 App. Div. 184, 72 N. Y. Supp. 948; Osborne v. Hey-
ward, 40 App. Div. 78, 57 N. Y. Supp. 542; Cumberland v. Codrington,
3 Johns. Ch. 229, 8 Am. Dec. 492; Halsey v. Reed, 9 Paige, 446; Coffin
v. Lockhart, 60 Hun, 178, 14 N. Y. Supp. 719; Huntley v. Re Voir,
66 Hun, 291, 20 N. Y. Supp. 920. As was said in Wilbur v. War-
ren, 104 N. Y. 194, 10 N. E. 263:

"On a conveyance by the mortgagor subject to the mortgage, the plain mean-
ing of the transaction between the parties is that the lands shall pay the
mortgage debt in exoneration of the personal liability of the mortgagor on his
bond, and in equity on such a conveyance the land is treated as the principal
debtor and the mortgagor as surety for the mortgage debt. If the deed, in
addition, contain a covenant on the part of the grantee to pay the mortgage,
the land still remains the primary fund for the payment of the mortgage.
* * * The essential purpose of such a covenant is to indemnify the mort-
gagor against the contingency that the land may not bring enough to pay the
mortgage debt, and thereby leave him exposed to a claim for a deficiency."

In Keller v. Lee, 66 App. Div. 184, 72 N. Y. Supp. 948, the court
held that where a conveyance was made by which the grantee assumed
and agreed to pay a mortgage, subject to which the conveyance was
made, the land was the primary fund for the payment of the mortgage
debt, and, as between the grantor and the grantee, the liability of the
latter is that of indemnitor or surety only, and that, where the grantor
paid the mortgage debt and procured the mortgage to be discharged of
record without first requiring the mortgagee to resort to the land,
he could not maintain an action against the grantee to recover the
amount expended by him. In Huntley v. Re Voir, 66 Hun, 291, 20 N.
Y. Supp. 920, it was held that the grantee taking a deed, in which he

assumed and agreed to pay a mortgage not being bound to pay the mortgage in exoneration of the land, which was the primary fund for its payment, might pay the mortgage debt, and by taking an assignment thereof to his wife still enforce it as a lien and cut off the lien of a judgment subsequent to the mortgage.

Dora Wiehorst Bonhoff, the plaintiff in this action, by accepting the deed from the widow of Charles Wiehorst containing a covenant to pay and discharge the lawful debts of Charles, at most only agreed to save the estate and heirs of Charles harmless from any deficiency which might arise in the event of a foreclosure of the Jark mortgage. She did not obligate herself to pay and discharge the Jark mortgage, but had the right to enjoy the land and the rent, issues, and profits therefrom without actually paying the mortgage for the benefit of the remaindermen. When, therefore, for the purpose of protecting her life estate in the property, she was compelled to pay and discharge the Jark mortgage, she became subrogated to the rights of Jark in that mortgage to the extent at least of reimbursing herself for the moneys paid by her on account of the principal as shown in our prior opinion. The plaintiff might not have any right to demand a personal judgment against the estate of Charles by reason of the premises; but that she never has sought or demanded, and the judgment of foreclosure heretofore granted contained no provision for any personal judgment against any one.

It must be manifest, too, from what has been said that the clause in the deed to the plaintiff in which she agreed to pay the "lawful debts" of her son Charles cannot be said to include or comprehend the mortgage debt in question. If we hold the effect of the extension agreement was to make Charles assume the Jark mortgage, the legal effect was to make him simply an indemnitor to the plaintiff, or a surety for the payment of the mortgage. The debt still remains the debt of Henry Wiehorst, who borrowed the money, and gave the original bond. And, although Charles may have subsequently in effect become surety for its payment, nevertheless we think it cannot be said the debt was his debt. We therefore conclude that the newly discovered document on which a new trial is asked, if introduced in evidence, could not possibly change the result of the litigation or defeat a foreclosure.

The fact that the interest actually conveyed by the widow of Charles to this plaintiff was of very little value also has an important bearing on the actual intent of the parties. It can hardly be supposed that the plaintiff ever really intended to obligate herself to pay off an existing mortgage of $2,150 for the benefit, not of herself, but of remaindermen to whom she at least owed no legal duty. We think such was neither her real intent, nor the legal construction to be placed on the dealings of the parties.

The motion to set aside the judgment and to grant a new trial is therefore denied.